Wanamaker, J.
In the spring of 1914 it became necessary to lay new tracks for the operation of the street railway on Superior street viaduct in the city of Cleveland.
Pursuant to Section 38 of the franchise between The Cleveland Railway Company and the city of Cleveland, the former asked the latter for a permit to occupy and open up the street for the purpose of laying said new tracks. The city • refused to grant said permit unless the railway company would then and there agree to renew the pavement between the tracks and for a space one foot in width outside the tracks, the city contending that this obligation was imposed upon the railway company under the franchise. This the railway company denied, and therefore refused to renew the pavement.
Finally it was agreed between the parties that the railway company should proceed to renew its tracks and do whatever paving was made necessary thereby in the situation, and thereafter suit should be brought by the railway company against the city to determine the relative liabilities upon the facts and under the franchise.
The agreement by virtue of which the railway company made said changes in track and pavement contained among other things the two following provisions, as an agreed statement of facts:
*124 “(1) That the present tracks on that portion of the viaduct are worn out and new tracks ought to be laid at once.”
“(2) That the present paving blocks which must be removed in order to relay the tracks are-worn out, and that when the new tracks are laid, it will be necessary to use new paving block to restore the street to a proper condition for traffic.”
After such changes in track and pavement had been made, suit was duly brought in the common pleas court of Cuyahoga county to recover from the city of Cleveland, at a fair and reasonable contract price, for material and labor used in connection with said pavement.
Upon trial had, judgment was entered in favor of the railway company against the city. Error was prosecuted to the court of appeals, which reversed the judgment of the court of common pleas and entered final judgment for the city. Error is prosecuted here to reverse the judgment of the court of appeals.
Plaintiff in error relies for a reversal upon Section 7 of Ordinance No. 16238-A, known as the “Taylor Franchise,” particularly the latter part of such section. The section reads:
“The company shall maintain in constant repair the pavement within a space seven (7) feet in width for single-track, and for double-track the entire space between the outer rails of both tracks, including the space between the two tracks and one foot outside of each outer rail, but in no event to exceed eighteen feet, except about curves, special work and where there are more than two tracks in a street, in *125 all paved streets' occupied by its tracks, whether such streets were paved at the time of the passage of this ordinance or subsequently thereto; but the company shall not be required to repave by virtue of this obligation to repair, nor by virtue of any requirement of the general ordinances of the city of Cleveland during the continuance of this grant.”
It is vigorously urged that what was done in this case, as shown by the record, was not a repair of the pavement, but a repaving thereof.
The words “repair” and “repave” in connection with streets and highways are in general and common use. They each have a distinctive and well-understood meaning. When any street pavement becomes in such general condition as to be unfit of unsafe for general public travel, and the municipal authorities duly determine by resolution or ordinance such necessity, they then proceed, agreeable to the statute, to accomplish such repavement of all or a part of the street, but usually the whole width of the street from curb to curb. If, however, the street is generally fit and safe for the general public travel, but certain spots or 'localities, by reason of inferior material, inferior workmanship, unusual travel, neglect to repair, or some local disturbance, become unfit or unsafe, then such a situation would not be included in the word “repave” but would be properly included in the word “repair.” Of course locally there would be a “repaving,” and technically every new block laid would be a “repaving” as to that block, but in the language of street construction and improvement the words and phrases above used have a clear and *126 distinct meaning and are fairly included in the word “repair.”
To illustrate — the laying of water mains, gas pipes, telephone or telegraph conduits, and the like, under a pavement, would necessitate at some points such changes in the pavement by the use of new blocks or material as might in one sense be called a “repaving,” but in another sense the restoration of such pavement to its former state of usefulness would be simply a “repairing” of the street. As to the spot on the street it would be a “repaving.”' As to the whole street itself, it would simply be a “repairing.”
What was evidently intended here by this latter part of said Section 7 was this: That when the city determined upon a new pavement for the street, whether of the same or a different material, the railway company should “not be required to repave,” or to pay any part of the cost of the same. But after the same had been repaved, it would then become the duty of the railway company to keep the same in repair so long as the pavement was in general use by the traveling public.
But there is a further and all-conclusive fact decisive of this case.
The following agreed fact appears in the record:
“That the present paving blocks which must be removed in order to relay the tracks are worn out and that when the new tracks are laid, it will be necessary to use new paving block to restore the street to a proper condition for traffic.”
Blackstone has furnished us a most efficient rule in construing and applying a legislative act:
*127 1. What was the old law before the legislative act ?
2. What was the mischief under the old law which the legislative act sought to correct?
This valuable test as to law furnishes us an interesting analogy as to facts.
The same principle that applies to the construction of a legislative act very often may with reason apply to a contractual act, the franchise in .this case.
What was the obligation of the railway company as to the pavement during the life of the old track? When we have determined this, we may the better understand what its obligation is to the pavement during the life of the new track.
Some stress is laid upon the admission that the paving blocks to be removed in order to relay the tracks were “worn out.” Being “worn out” naturally they would be unfit to be relaid about the new track, and hence new blocks would have to be used, which plaintiff in error contends would amount to a repaving, from which they contend the franchise contract relieved them.
But the admission goes much farther.
If the blocks were worn out they were not only unfit to be relaid, but were also unfit to be in the pavement about the old track, which conclusively proves that the railway company was then in default of its plain duty under the franchise in failing “to maintain in constant repair the pavement,” that is to say, before the track was changed.
The duty had arisen and had been imposed by *128 franchise upon the railway company to put the pavement about the old tracks in proper repair.
Obviously there can be no misunderstanding as to this obligation under the franchise, which obligation covered all the company’s tracks during the whole period of the franchise, and whether such tracks were using old rails or new ones, in repair or out of repair. Had the railway company discharged its full duty under the franchise in keeping the pavement between and along the old rails in constant repair, as provided by the franchise, the railway company would have had the new blocks or suitable blocks to use about the new rails.
The obligation to lay the new rails under the franchise is admitted by the railway company. When they discharge this obligation, how can it be contended that they are relieved from the obligation to keep the pavement in repair along and between the tracks, as to which they had already defaulted in the use of the old rails with a worn-out block pavement adjacent thereto?
This admission seems decisive of the case and the obligation of the railway company in connection with the new track, by reason of its own admitted default in connection with the old track.
Under the franchise it is self-evident that whether the rails were old or new, it was the railway company’s duty to maintain them in repair during the life of the present pavement, and there being no complaint that the present pavement was in any wise inadequate for public travel, but upon the contrary had a future life perhaps of many *129 years, the duty of the railway company to repair is undeniable.
But if there were any doubt about the construction or application of this franchise to the admitted facts before us, again the city should prevail.
In this day private interests, and private rights must yield to public interests- and public rights, and, where there is ambiguity or uncertainty as to which of two constructions should prevail in a franchise contract, it is quite clear that that construction should be adopted by courts that would be most favorable to the public interest and welfare.
The judgment of the court of appeals should be, and therefore is, affirmed.

Judgment affirmed.

Newman, Jones, Matthias and Johnson, JJ., concur.